# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| INFOCISION MANAGEMENT | ) | CASE NO. 5:08CV1342 |
| CORP., | ) | RELATED CASE NO. 5:08CV1412 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| FOUNDATION FOR MORAL LAW | ) | |
| INC., | ) | |
| DEFENDANT. | ) | |

This case is before the Court for consideration of three motions filed by the parties. Specifically, the Court shall address:

- FML's motion to certify the Court's ruling on March 29, 2010 that FML could not claim contractual damages for recovery of net revenues Infocision raised recalling individual donors more than twice (Doc. No. 142);

- Infocision's motion for summary judgment (Doc. No. 145); and

- FML's motion for summary judgment (Doc. No. 147.)

Each motion is ripe for disposition.

## Background

The facts surrounding this contract action have been set forth in numerous Memorandum Opinions, familiarity with which is presumed. For purposes of framing the issues presented by the parties, it is sufficient to note that these related cases involve the

failed business relationship of Infocision Management Corp. ("Infocision") and Foundation for Moral Law Inc. ("FML"). Briefly, on March 31, 2004, Infocision entered into a one-year contract with FML, a charitable organization, whereby Infocision agreed to provide telemarketing services designed to raise money to support the charitable and political work of FML, and to compile a donor list for FML. The agreement was extended for an additional year on November 8, 2004, and later was revised on December 2, 2004 ("Revised Agreement"). (*See* 5:08CV1342, Doc. No. 1-2, Compl., Ex. 2, Revised Agreement.)

The Revised Agreement proclaims that it "is a combination of the functions of donor acquisition, donor renewal, public education, and program services, which has induced Foundation for Moral Law to enter into this Agreement." (Revised Agreement at p. 3.) For its part, Infocision agreed, among other things, to develop a script and training materials for its "telephone communicators" to assist them in placing calls to donors and prospective donors, and also agreed to "contact donors in accordance with [FML's] instructions." (*Id.* at 4.) The Revised Agreement further states that it is the "complete and entire contract between the parties […]." (*Id.* at 6.)

The Revised Agreement also contains an addendum, entitled the "Breakeven Agreement," which addresses the parties' rights and duties in the event that the initial telemarketing campaign results in a net deficit. The Breakeven Agreement provides that "[f]or purposes of this agreement, the income generated in total will be applied toward the costs of the telemarketing program. Any excess income that is generated, over and above the costs of the program, will be released to the Foundation for Moral Law." (Revised Agreement, Addendum 1, Breakeven Agreement at 16.) The

2

Breakeven Agreement further provides that, if (because the amount of donations received during the compilation of the donor list did not exceed the costs of performing the work) Infocision incurred a deficit on FML's account, FML would have two options for paying the deficit. Specifically, this provision, which forms the foundation for the present litigation, states:

> Given that a net deficit exists after the initial program, the Foundation for Moral Law will have the option to pay the deficit, or allow Infocision to make up to *two recalls per donor acquired* during the next rolling 18 month period to make up the deficit.

(*Id*.; emphasis added.)

The terms of the Breakeven Agreement were to govern this subsequent telemarketing campaign. This second campaign was to cease immediately after Infocision had recovered its costs and the deficit was eliminated. "If [however,] breakeven was not achieved after *two telephone calls per donor acquired*, the Foundation for Moral Law would have no further financial obligation to cover any unpaid invoices due Infocision as a result of the prospecting program to these names […]." (*Id*. at 17; emphasis added.)

It is undisputed that there was a deficit in FML's account after the initial telemarketing campaign. FML elected to employ the later payment option, and it is the interpretation of the term "make up to *two recalls per donor acquired*" that is at the center of these related actions.

Infocision insists that the term "make up to two recalls per donor acquired" permitted it to recall previously solicited donors multiple times so long as its total number of recalls was limited to twice the total number of donors acquired during the initial prospecting and collecting campaign. In contrast, FML believes that that the

3

contractual provision in question limited Infocision to placing no more than two recalls to any individual donor.

It is undisputed that Infocision recalled approximately 2,286 donors more than twice in an attempt to make up the deficit on FML's account. In October 2005, FML's representative Richard Hopson instructed Infocision to stop recalling any donor more than twice based upon his interpretation of the recall provision. (Hobson Dep. at 201-02, 312, 324.) Infocision disagreed with Hobson's interpretation, but ultimately stopped all recalls.[1]

FML filed suit against Infocision (5:07CV3121), asserting federal and state RICO claims, as well as various contract and tort causes of action. This initial lawsuit was eventually dismissed without prejudice on June 2, 2008.

The following day (June 3, 2008), Infocision filed its own action (5:08CV1342) against FML, alleging breach of contract. By its complaint, Infocision sought to recover approximately $422,159 in unpaid fees. (Infocision Compl. at ¶ 13.) Infocision also sought an accounting. (*Id.* at ¶ 21.) FML responded by filing its own action (5:08CV1412), raising many of the same federal and state claims it brought in its original suit. FML also filed a counterclaim in Infocision's action. (5:08CV1342, Doc. No. 18.) Its counterclaim was in all respects identical to the complaint in its own action. (*Id.*)

---

[1] Although Dr. Hobson initially instructed Infocision to stop making calls, he later told Infocision to simply refrain from recalling donors more than twice. (5:08CV1342, Doc. No. 147 at 5, Ex. A, letter dated November 15, 2005 to Rebecca Backus.) Infocision ultimately stopped all recalls "after determining that Hobson's restrictions made it impossible to generate any net revenues from further calls." (Doc. No. 145 at 4.)

4

On January 14, 2009, the Court granted Infocision's motion to dismiss FML's claims in Case No. 5:09CV1412 for breach of fiduciary duty and agency relationship, federal and Ohio RICO, and nuisance, along with the corresponding counts in FML's counterclaim in Case No. 5:08CV1342. (Doc. No. 24.) On July 27, 2009, the Court granted Infocision summary judgment on FML's fraudulent inducement claim. (5:08CV1342, Doc. No. 67.)

Of FML's claims, only breach of contract survived these rulings. Infocision subsequently sought partial summary judgment on FML's claim for damages related to donor pool spoliation. On March 1, 2010, the Court granted Infocision's motion, and determined that FML was not entitled to seek damages resulting from alleged donor burnout. (5:08CV1342, Doc. No. 112.)

As the April 14, 2010 trial date approached, the parties began to file a series of motions *in limine*. In a decision dated March 29, 2010, the Court ruled on the pending pretrial motions. Pertinent to the present motion to certify, the Court ruled that FML was not entitled to claim contractual damages for recovery of net proceeds raised through recalling individual donors more than twice. (5:08CV1342, Doc. No. 136, March 29, 2009 Memorandum Opinion at 7-9.)

On March 30, 2010, FML filed a motion to certify for immediate appeal the Court's Order resolving the motions *in limine*, and, in particular, the Court's ruling relative to the net proceeds of Infocision's second campaign. (5:08CV1342, Doc. No. 136.)  The following day (March 31, 2010), FML filed a Notice of Appeal from the same decision, stating that the motions *in limine* ruling was a final and appealable order. (Doc. No. 138.)

5

Having been temporarily divested of jurisdiction by the Notice of Appeal, the Court cancelled the April 14, 2010 trial date. On August 7, 2010, the Sixth Circuit dismissed the appeal, *sua sponte*, for want of appellate jurisdiction. (Doc. No. 143.) The consolidated cases were returned to this Court's docket, and the Court set a new trial date of November 8, 2010. At that time, the Court also set a date for dispositive motions.

Each party has moved for summary judgment. Infocision seeks summary dismissal of FML's breach of contract claim. FML requests dismissal of all claims in Infocision's action. Because both summary judgment motions center on the interpretation of the term "two calls per donor acquired," the Court will address the motions together.

**1.     Motions for Summary Judgment**

*Standard of Review*

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. […]

Rule 56(e) specifies the materials properly submitted in connection with a motion for summary judgment:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. […] The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts

> showing that there is a genuine issue for trial. If the adverse party does not
> so respond, summary judgment, if appropriate, shall be entered against the
> adverse party.

However, the movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *White v. Turfway Park Racing Ass'n*., 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to

point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id.*

In a contract action, "[s]ummary judgment ordinarily is appropriate […] when the language of the contract is unambiguous, or, if the language is ambiguous, where extrinsic evidence leaves no genuine issue of material fact and permits interpretation of the agreement as a matter of law." *Sullivan v. Cap Gemini Ernst & Young U.S.*, 518 F. Supp. 2d 983, 994 (N.D. Ohio 2007) (citing *UAW v. BVR Liquidating, Inc.*, 190 F.3d 768, 772 (6th Cir. 1999)).

*Analysis*

To establish a claim of breach of contract under Ohio law, a plaintiff must demonstrate: (1) the existence of an enforceable contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damages suffered by the plaintiff as a result of the breach. *Jarupan v. Hanna*, 173 Ohio App. 3d 284, at ¶ 18 (Ohio Ct. App. 10th Dist. 2007); *Garofalo v. Chicago Title Ins. Co.*, 104 Ohio App. 3d 95, 108 (Ohio Ct. App. 8th Dist. 1995). "A party breaches a contract if he fails to perform according to the terms of the contract or acts in a manner that is contrary to its provisions." *Savedoff v. Access Group, Inc.*, 524 F.3d 754, 762 (6th Cir. 2008) (citing *Jarupan*, 173 Ohio App. 3d at P18).

<u>Contract Interpretation</u>

"Under Ohio law, the interpretation of written contract terms, including the determination of whether those terms are ambiguous, is a matter of law for initial determination by the court." *Safedoff*, 524 F.3d at 763. *See Ohio Historic Soc. v. General Maintenance & Engineering Co.,* 65 Ohio App. 3d 139, 146 (Ohio Ct. App. 10th Dist. 1989). It is the role of the court to discern the intent of the parties, which is "presumed to reside in the language they choose to use in their agreement." *Graham v. Drydock Coal Co.*, 76 Ohio St. 3d 311, 313 (1996). *See Savedoff*, 524 F.3d at 763; *United States Fid. & Guar. Co. v. St. Elizabeth Med. Ctr.*, 129 Ohio App. 3d 45, 55 (Ohio Ct. App. 2nd Dist. 1998) (quoting *Foster Wheeler Enviresponse, Inc v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St. 3d 353, 361 (1997) ("The cardinal purpose for judicial examination of any written instrument is to ascertain and give effect to the intent of the parties *** [which] is presumed to reside in the language they chose to employ in the agreement."))

Where the terms are unambiguous, courts are "constrained to apply the plain language of the contract." *City of St. Mary's v. Auglaize County Bd. of Commrs.*, 115 Ohio St. 3d 387, 390 (2007). *See Safedoff*, 524 F.3d at 763. *Accord Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St. 2d 241, 245-46 (1978) ("[C]ommon words appearing in a written instrument are to be given their plain and ordinary meaning unless manifest absurdity results or unless some other meaning is clearly intended from the face or overall contents of the instrument.") Extrinsic evidence, however, may be utilized to ascertain the intent of the parties when the contract is unclear and ambiguous, or when surrounding circumstances give the plain language particular meaning. *Graham*, 76 Ohio St. 3d at 313-14. "Nevertheless, a court 'is not permitted to alter a lawful contract by

9

imputing an intent contrary to that expressed by the parties' in the terms of their written contract." *Safedoff*, 524 F.3d at 763 (quoting *Westfield Ins. Co. v. Galatis*, 100 Ohio St. 3d 216, 219 (2003)).

"Contractual language is ambiguous only where its meaning cannot be determined from the four corners of the agreement or where the language is susceptible of two or more reasonable interpretations." *Covington v. Lucia*, 151 Ohio App. 3d 409, 414 (Ohio Ct. App. 10th Dist. 2003) (internal citation omitted). *See Sec'y of USAF v. Commemorative Air Force*, 585 F.3d 895, 900 (6th Cir. 2009). When both parties offer "plausible interpretations of the agreement drawn from the contractual language itself, [this] demonstrates that the provision is ambiguous." *Int'l Union UAW Local 91 v. Park-Ohio Industries, Inc.,* 1998 U.S. App. LEXIS 8677, at *18 (6th Cir. June 15, 1989).

"If an ambiguity exists in a contract, then it is proper for a court to consider 'extrinsic evidence,' i.e., evidence outside the four corners of the contract, in determining the parties' intent." *Covington*, 151 Ohio App. 3d at 414 (citing *Blosser v. Carter*, 67 Ohio App. 3d 215, 219 (1990)). A court cannot, however, resort to the use of extrinsic evidence until it has made a determination that the contract terms are ambiguous. *Local 783, Allied Industrial Workers v. General Electric Co*., 471 F.2d 751, 757 (6th Cir. 1973) ("[O]nly when the court has determined that the contract is ambiguous is a construction of the clause necessary. After a finding of ambiguity has been made, '[…extrinsic evidence] is admissible to aid in its interpretation.") *See Schachner v. Blue Cross & Blue Shield*, 77 F.3d 889, 893 (6th Cir. 1996) ("Thus, in this circuit, before a district court can consider extrinsic evidence of the parties' intent, it must find an ambiguity on the face of the contract.") Moreover, it is well settled that "courts

may not use extrinsic evidence to create an ambiguity; rather, the ambiguity must be patent, i.e., apparent on the face of the contract." *Covington*, 151 Ohio App. 3d at 414. *See Safedoff,* 524 F.3d at 763. *See also Schachner*, 77 F.3d at 893.

In determining whether contractual language is ambiguous, the contract "must be construed as a whole." *Tri-State Group, Inc. v. Ohio Edison Co.*, 151 Ohio App. 3d 1, 9 (Ohio Ct. App. 2002) (internal citation omitted). *See Safedoff*, 524 F.3d at 763. Further, "courts should give effect, if possible, to every provision therein contained, and if one construction of a doubtful condition written in a contract would make that condition meaningless, and it is possible to give it another construction that would give it meaning and purpose, then the latter construction must obtain." *Foster Wheeler Eviresponse, Inc*., 78 Ohio St. 3d at 362 (internal citation omitted).

With these guiding rules of construction in mind, the Court turns to the parties' agreement.

<u>Two calls per donor acquired</u>

Interestingly, both sides claim that the contractual phrase "two calls per donor acquired" is unambiguous and, as such, the plain meaning of these words should be applied. They simply disagree as to what plain meaning actually attaches to these words.

As previously discussed, Infocision believes that the language merely establishes a ratio to be used in determining the number of calls Infocision could make during the second campaign. It underscores the fact that "the Breakeven Agreement does not expressly prohibit Infocision's recalling any single donor more than twice." (Doc. No 145 at 4.) Infocision explains that donors are not equally generous, and, as a result, Infocision retained the right to determine who would be called to make up the deficit, and

11

how often.[2] Noting that the contract, itself, represents that it is the entire agreement between the parties, Infocision insists that FML cannot rely on any promises allegedly made by Infocision employees during contract negations.

FML sees the contract provision in a different light. In FML's estimation, the "two calls per donor acquired" provision can only be understood to mean that Infocision may make no more than two calls *to* each donor. Further, FML rejects Infocision's interpretation that the language represents a ratio, noting that "[a]n interpretation that would permit thousands of recalls to an individual donor is absurd and not practical." (Doc. No. 150 at 6.) Instead, reading the provision to place a limit on the number of calls that may be placed to each individual donor, FML notes that the provision is consistent with discussions had by the parties during contract negotiations where FML repeatedly expressed the concern that it wanted to protect its donor base from excessive solicitation, and where Infocision employees acknowledged that concern.[3] Any ambiguity that may now exist, FML insists, must be construed against Infocision as the drafter of the agreement.

Of course, discussions that may or may not have occurred prior to the signing of the contract represent extrinsic evidence that cannot be utilized to determine if

---

[2] Infocision attempts to support its view that donors do not give in equal proportions, and that, in some cases, it is beneficial to call certain donors multiple times, by citing to the deposition testimony of Plaintiff's expert, David Himes. In his deposition, Himes explained that "the people who are most likely to give to you are the people who just gave." (Himes Depo. at 31.) Himes further noted that calling a generous donor "three, four or five times in a 18-month period" would be appropriate. (*Id*. at 36-37.) Of course, the Court may no sooner rely on Infocision's views on telemarketing, as it can turn to expert testimony. Both are extrinsic evidence, and cannot be utilized until the Court determines that the contract, on its face, is ambiguous. *See Schachner*, 77 F.3d at 893; *Graham*, 76 Ohio St. 3d at 313-14.

[3] Specifically, FML maintains that, as an inducement to cause FML to enter into the present agreement, Infocision officers, Curtis Stern and Rebecca Backus, assured FML's executive director and president, that the recall provision would limit Infocision to placing no more than two additional calls to each individual donor. (Doc. No. 147 at 4.)

12

the contract, itself, is ambiguous. *See Schrachner*, 77 F.3d at 893; *Graham*, 76 Ohio St. 3d at 313-14. Further, if the Court finds that the plain meaning of the words employed by the parties is unambiguous, it need not, and cannot, consider such extrinsic evidence, at all. *See City of St. Mary's*, 115 Ohio St. 3d at 390.

Turning to the language of the recall provision, the Court finds that the plain meaning of the term "two calls per donor acquired" clearly represents a formula by which the maximum number of calls that Infocision could make during the recall period was to be determined. Such an interpretation comports with the common usage of the term "per." The Oxford Dictionaries Online define the word "per" as "for each (used with units to express a rate)." Oxford University Press 2010. Similarly, Dictionary.com defines "per" as "for each; for every: *Membership costs ten dollars per year. This cloth is two dollars per yard." See Seneca Valley, Inc. v. Village of Caldwell*, 156 Ohio App. 3d 628, 637-41 (Ohio Ct. App. 7th Dist. 2004) (bid price per unit was written into bid in order to calculate the total amount owed in the event that the units sold exceeded the bid).

Similarly, the term "two calls per donor acquired" can be easily understood as a formula by which Infocision could determine how many calls it could make during the breakeven campaign. This interpretation is consistent with the language of the Breakeven Agreement, as a whole. The purpose of the Breakeven Agreement was to govern FML's liability in the event of a deficit, and the extent of Infocision's right to recoup its losses. The agreement provided that, at the end of the second campaign, FML could walk away from the agreement, regardless of whether the deficit had been eliminated. Thus, it was imperative for the parties to define the point at which FML was no longer indebted to Infocision and could walk away. Reading the contract to allow

13

Infocision to place calls not to exceed two times the times the total number of donors sets that limit, and clearly defines FML's obligations and Infocision's rights.

In contrast, FML's interpretation would not give effect to the entire agreement. If the provision "two calls per donor acquired" is understood to simply restrict Infocision to two calls per donor, the term "acquired" would be rendered meaningless. It would have been unnecessary to add that term if the two calls referred to each individual donor. Because the Court must "give effect, if possible, to every provision" in an agreement, *see Foster*, 78 Ohio St. 3d at 360-62, and FML's interpretation would render a term meaningless, Infocision's interpretation must prevail.[4]

<u>Conclusion on Contract Interpretation</u>

Having resolved the dispute over the interpretation of the term "two calls per donor acquired" in favor of Infocision, it is clear that Infocision did not breach the parties' contract when it made more than two recalls to certain donors during the breakeven campaign. As such, Infocision's motion for summary judgment is **GRANTED**, and FML's case, Case No. 5:08CV1412, and its counterclaim in Case No.

---

[4] In reaching this conclusion, the Court is not persuaded by FML's argument that Infocision's interpretation would permit Infocision to call one donor thousands of times. While there is nothing in the agreement to limit the number of recalls Infocision could make to each individual donor, it was in Infocision's best interests to employ good judgment in attempting to recoup its losses. Although perhaps technically permitted, it is unlikely (although not inconceivable) that sound business judgment would support a decision to expend all of the allotted calls on one donor, and, as such, the Court cannot find that giving the terms their plain and ordinary meaning results in "manifest absurdity." *See Alexander*, 53 Ohio St. 3d at 245. Moreover, it is not for the Court to judge the wisdom of the parties' agreement. *See Fairway Manor, Inc. v. Board of Comm'rs*, 36 Ohio St. 3d 85, 88 (1988).

08CV1342, are **DISMISSED**.[5] Likewise, FML's motion for summary judgment, in Case No. 5:08CV1342, is **DENIED**.

Infocision did not, however, move for summary judgment in its favor in its own action. (*See* 5:08CV1342, Doc. No. 145.) While the Court's ruling today resolves the question of whether Infocision breached the agreement by recalling donors more than twice, and whether FML was entitled to instruct Infocision to stop making recalls, numerous issues, including the proper determination of damages and Infocision's right to an accounting and the $ 14,644.79 that is currently held in the parties' joint bank account,[6] remain. Thus, final disposition of the remaining issues in Case No. 5:08CV1342 would be inappropriate at this time.

### 2.      Motion to Certify

The Court now examines FML's motion to certify for interlocutory review, pursuant to 28 U.S.C. § 1292(b), the Court's March 29, 2010 Opinion and Order ruling on the parties' motions *in limine*. (*See* 5:08CV1342, Doc. No. 136.) Specifically, FML requests immediate review of the Court's ruling that FML was precluded from

---

[5] Summary dismissal of FML's contract claim and counterclaim would also be appropriate because FML cannot establish a necessary element—damages. The existence of legally cognizable damages is an essential element of any breach of contract action. *Firsdon v. Mid-American Nat'l Bank & Trust Co*., 1998 Ohio App. LEXIS 6028, at *6 (Ohio Ct. App. 6th Dist. Dec. 18, 1998) ("Unquestionably, damages are an essential element of a breach of contract claim.") (citing *American Sales, Inc. v. Boffo*, 71 Ohio App. 3d 168, 174 (Ohio Ct. App. 2d Dist. 1994)). On March 3, 2010, the Court ruled that FML could not establish that it suffered any damages from alleged donor burnout. (Doc. No. 112.) On March 29, 2010, the Court ruled that FML could not seek as a recovery for breach of contract the net revenues Infocision raised from recalling individual donors more than twice. (Doc. No. 136 at 7.) Because FML cannot establish any damages as a result of Infocision's recall practices, its breach of contract claim must fail for this additional reason.

[6] The Breakeven Agreement expressly states: "The net income from the recalls would be utilized first to cover the cost related to that recall program and secondly, to satisfy any acquisition debt." (Breakeven Agreement at 16.) As such, if the money held in the parties' joint account represented proceeds from the second campaign, then Infocision would be entitled to apply the money to the deficit. The Court, however, has nothing before it that establishes the source of this money. Therefore, summary disposition of these funds would be inappropriate.

15

claiming contractual damages for recovery of net revenues Infocision raised from recalling individual donors more than twice. (*Id.* at 7-9, resolving Doc. No. 116.) Because the Court finds that there can be no substantial ground for a difference of opinion as to whether FML has met its burden of demonstrating that it properly pled an entitlement to these damages, and because an immediate appeal would unnecessarily delay this litigation, the Court **DENIES** FML's motion to certify.

*Standard for Interlocutory Review*

The final judgment rule is set forth in 28 U.S.C. § 1291, and provides that federal circuit court appellate review is limited to final judgments of the districts courts. Under this rule, the appealing party is required to bring all claims of error in a single appeal at the conclusion of the proceedings in the trial court. *See Firestone Tire Co. v. Risjord*, 449 U.S. 368, 374 (1981). The obvious purpose of the final judgment rule is to avoid "the debilitating effect on judicial administration caused by piecemeal appellate disposition of what is, in practical consequence, but a single controversy." *Elsen v. Carlisle & Jacquelin*, 417 U.S. 156, 170 (1974).

A limited exception to the final judgment rule is found in 28 U.S.C. § 1292(b), which provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to whether there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within 10 days after the entry of the order: *Provided, however*, That application for an appeal hereunder shall not stay proceedings in the

16

district court unless the district court or the Court of Appeals or a judge thereof shall so order.

(Emphasis in original.)

A party seeking relief under this statute must show that he has met the four elements set forth by the Sixth Circuit. "These are: (1) the question involved must be one of 'law'; (2) it must be 'controlling'; (3) there must be substantial ground for 'difference of opinion' about it; and (4) an immediate appeal must materially advance the ultimate termination of the litigation." *Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris Inc.,* 29 F. Supp. 2d 825, 831-832 (N.D. Ohio 1998) (citing *Vitols v. Citizens Banking Co*., 984 F.2d 168, 170 (6th Cir. 1993)). *See Genesis Ins. Co. v. Alfi*, 2007 U.S. Dist. LEXIS 25292, at *3 (S.D. Ohio Mar. 27, 2007).

Consequently, "[r]eview under § 1292(b) should be sparingly granted and then only in exceptional cases." *Vitols*, 984 F.2d at 170. *See Iron Workers*, 29 F. Supp. 2d at 83. Such review was "not intended as a 'vehicle to provide early review of difficult rulings in hard cases.'" *Cromer Fin. Ltd. v. Berger*, 2001 U.S. Dist. LEXIS 11951, at *4 (S.D.N.Y. Aug. 16, 2001) (quoting *Primavera Familienstifung v. Askin*, 139 F. Supp. 2d 567, 570 (S.D.N.Y. 2001)). The decision of whether to certify an interlocutory appeal pursuant to § 1292(b) lies within the discretion of the court, *see W. Tenn. Chptr. Of Assoc. Builders & Contrs., Inc. v. City of Memphis,* 293 F.3d 345, 351 (6th Cir. 2002), and the burden of showing exceptional circumstances exist warranting an interlocutory appeal rests with the party seeking such review. *Id.* at 350.

17

*Analysis*

Even assuming the Court's ruling involved a controlling question of law, the Court finds that the final two prongs of the test for interlocutory review cannot be met. A substantial difference of opinion, for purposes of § 1292(b), exists when "(1) the issue is difficult and of first impression; (2) a difference of opinion exists within the controlling circuit; or (3) the circuits are split on the issue." *W. Tenn. Chptr. of Assoc. Builders & Contrs., Inc. v. City of Memphis*, 138 F. Supp. 2d 1015, 1019 (W.D. Tenn. 2000) (internal quotations omitted). The issue raised in Infocision's motion *in limine* does not involve a difficult issue or one of first impression, nor was there a difference of opinion within the Sixth Circuit as to the question of whether a plaintiff must properly plead damages in order to pursue them. *See generally Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, FML simply argues that the Court erred in ruling that its Complaint failed to set forth an entitlement to net revenue. The moving party's mere disagreement with the district court's ruling, however, is not a substantial ground for difference of opinion. *Murray v. Geithner*, 2010 U.S. Dist. LEXIS 8415, at *13 (E.D. Mich. Feb. 2, 2010).

Likewise, the Court finds that certification would not materially advance the litigation. In considering this final prong of the test, "[a] critical factor is whether the interlocutory appeal will cause excessive delay." *Katz v. Live Nation, Inc*., 2010 U.S. Dist. LEXIS 91310, at *8 (D.N.J. Sept. 2, 2010) (citing *Hulmes v. Honda Motor Co.,* 936 F. Supp. 195, 212 (D.N.J. 1996)). "[W]here discovery is complete and the case is ready for trial, an interlocutory appeal 'can hardly advance the ultimate termination of the

case.'" *Lorentz v. Westinghouse Electric Corp.*, 472 F. Supp. 954, 956 (W.D. Pa. 1979)

(quoting *Caldwell v. Seaboard Coastline Railroad*, 435 F. Supp. 310 (W.D.N.C. 1977)).

There have already been numerous delays in this action, many of which

may be attributed to FML. Most recently, on March 31, 2010, FML attempted to take an

ill-advised appeal from the Court's motions *in limine* ruling. (*See* 5:08CV1342, Doc. No.

138, Notice of Appeal.) Inasmuch as this Court's pretrial ruling did not constitute a final,

appealable order, the Sixth Circuit *sua sponte* dismissed the appeal for lack of appellate

jurisdiction. (5:08CV1342, Doc. No. 143.) When FML filed its Notice of Appeal, this

case was within two weeks of trial. The Court was forced to stay the trial pending

resolution of FML's appeal.[7] Now that this case is, again, within weeks of trial, it would

not be prudent to subject this matter to further delay. Proceeding to trial as scheduled is

the course of action that will do the most to materially advance the ultimate termination

---

[7] FML also filed a separate and related action, Case No. 5:09CV951, in April 24, 2009. The Court dismissed that action as a sanction after it determined that FML had brought the lawsuit for purposes of delay. (*See* Doc. No. 98, Opinion and Order at 6.) Notwithstanding the dismissal, however, the result was that the Court was forced to extend all of the dates and deadlines set forth in its Case Management Plan and Trial Order.

of this litigation.[8] As such, FML's motion to certify is **DENIED**.[9]

**Conclusion**

   For all of the foregoing reasons, Infocision's motion for summary judgment is **GRANTED**, and Case No. 08CV1412, and FML's counterclaim in Case No. 08CV1342, are hereby **DISMISSED**. FML's motion for summary judgment is **DENIED**. Further, FML's motion to certify is **DENIED**.

   The final pretrial conference is set for October 29, 2010 at 4:00 p.m. Counsel and the parties should review the Court's Final Pretrial Conference and Trial Order (Doc. No. 144) to ensure that they are in compliance with the Court's requirements for pretrial submissions. In addition, counsel and the parties should come to the final pretrial conference prepared to discuss the treatment of the remaining claims and issues

---

[8] Certification would be inappropriate for the additional reason that the Court's ruling on summary judgment that Infocision did not breach the recall provision in the contract has rendered the question of the type of damages FML may pursue moot. Rather than permit piecemeal litigation, it would be more expeditious to proceed to trial on Infocision's case, and then permit FML to appeal all of the Court's rulings, at once, on appeal.

[9] FML also seeks certification of the following questions: (1) whether a best efforts theory of recovery is cognizable under Ohio law in a breach of contract action; (2) whether disclosure of a best efforts theory of liability in an expert's report is sufficient to place a party on notice of a claim under this theory; and (3) what is the legal effect of a best efforts theory of recovery in a given action given the presence of a consequential damages provision in the parties' contract. (5:08CV1342, Doc. No. 142 at 4.) Prior to FML's filing of its Notice of Appeal, the Court had asked the parties to brief these issues. The briefing was stayed when FML sought immediate appellate review of the Court's motions *in limine* ruling. The Court has yet to issue a decision on any of these issues, and, as such, certification of these issues would be tantamount to a request for an advisory opinion, and would be inappropriate. *See Nickert v. Puget Sound Tug & Barge Co*., 480 F.2d 1039, 1041 (9th Cir. 1973) ("An announcement by a trial court of its then opinion on an abstract question of law prior to the taking of final, definitive action affecting the substantial rights of the parties is not an 'order' under 28 U.S.C. § 1292(b) which will support an interlocutory appeal.") The request for interlocutory review of these issues is also **DENIED**.

in light of the Court's present ruling on summary judgment.

**IT IS SO ORDERED.**

Dated: October 27, 2010

_____

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**